WM Crittenden Operations, LLC Issues before this court are whether the district court erred in not finding that the arbitrator exceeded his authority under the party's collective bargaining agreement and thus erred in granting summary judgment in favor of the appellee, and whether the district court erred in ignoring the appellant's public policy argument. Although the question here is a narrow one in reviewing an arbitrator's award, such deference does not grant carte blanche approval of any decision an arbitrator might make. Jacqueline Brooks, the grievant, was a CNA who was discharged from the appellant's nursing facility in West Memphis, Arkansas in accordance with the company's policy for facility-substantiated elder abuse of a resident. This policy is derived from a well-established public policy in this country protecting vulnerable elderly adults in nursing care facilities. The arbitrator found just cause for discipline under the company's policy, but found that termination was too harsh. Such a finding is a clear showing that the arbitrator's decision did not draw its essence from the contract, because the contract defined termination as the specific and only level of discipline to be imposed for such a violation. By imposing a lesser level of discipline, the arbitrator instilled his own brand of industrial justice. Furthermore, enforcing his award by bringing Ms. Brooks back to work would be a violation of the well-established, clearly defined, and dominant public policy against elder abuse in this country. The party's CBA, specifically Article 2, Management Rights Section 1, gives the appellant the right to promulgate and enforce work rules and policies, and also gives the appellant the right to discipline, suspend, or discharge employees for just cause. Counsel, why was there a stipulation entered that asked the arbitrator to determine what the proper remedy was here? My understanding is, and I may be mischaracterizing your position, that the issue of just cause was clearly the arbitrator's to make, but that management, based on the contract, is that the right argument that reserved the right to discipline under the agreement? But why was a stipulation offered to the arbitrator asking the arbitrator to decide the proper punishment here? Your Honor, I believe what you're referring to is the issue that was presented at arbitration to the arbitrator to decide was number one, whether or not the company violated the CBA by terminating Ms. Brooks, period. Number two, the second, and that is only if there was a violation found, then it would go to the question of, if there was a violation, then what would the property remedy have been? I take it your argument is that was controlled by the CBA? Correct. The arbitrator's award found just cause for discipline under the policy. The policy specifically stated that the level of discipline to be imposed for facility-substantiated elder abuse, which was present in this case, was immediate termination. Does that answer your question, Your Honor? Thank you. Yes. Well, who found that there was abuse under the definition of regulation? I'm sorry, go ahead, sir. Go ahead. Who made that finding? That was made by the facility administrator, who also testified at the hearing that that is, she specifically stated that that is one of her major roles as the facility administrator. Is that subject to review by the arbitrator? The decision made by the, the decision that was presented to the arbitrator to review was whether or not the company violated the CBA. So that gets to whether or not the company had just cause to terminate Ms. Brooks under the policy, which called for, if there is a substantiated allegation of elder abuse, then yes, under the policy, the facility would have had the right to terminate her. And so that was the question was, did the CBA get violated because of the action that the facility took? But the arbitrator, it was within the arbitrator's authority, wasn't it, to decide whether there was abuse? Well, it would have been in his, I mean, just cause. It was his determination to determine whether or not there was just cause. So, I mean, yes, I guess you could look at it that way. And that gets into the argument. What was the finding of just cause for termination or for discipline? What specifically did the arbitrator find there was just cause for? He specifically found that there was just cause for discipline. However, the only discipline in the policy was termination. Well, unless the arbitrator didn't find abuse. He never specifically said that there wasn't abuse. All he said is that the grievance had not used derogatory terms. That's how you define verbal abuse in your policy. Well, that's the way we define it. But what we're getting at here with the issue that we have with the arbitrator's decision is that he says derogatory terms, which, yes, is defined in our policy. But I think where we differ is that there wasn't any meaning given to what derogatory terms was. Specifically, the arbitrator's award found that Ms. Brooks' behavior was antagonistic. That while she was talking to the resident, she used a loud voice. She spoke so loud that she could be heard through rolled up car windows. She made intemperate and improper remarks like, get your butt into the van. She was yelling. Her tone was described as sarcastic, angry, mean, irritated, and harsh. The arbitrator also noted that she made the resident feel like a dog. In fact, the arbitrator went on to state that Brooks should not have spoken to the resident in a loud and intemperate voice on this day or any other day. And should not have acted in, and should have acted, excuse me, in a professional manner. And so with this, the arbitrator just simply says, well, there was no derogatory terms used. But he doesn't go on and explain at all what derogatory terms exactly are. So if you just look at the plain meaning and you say, what are derogatory terms? The Oxford Dictionary would define derogatory as showing critical attitude and lack of respect for somebody. And so our argument as to that question is that he did instill his own brand of industrial justice by lessening the level of discipline. And your honors, if I may, if there's no other questions, I would like to save my remaining time for rebuttal. Very well, you may. Thank you for your argument. Ms. Doolittle, we'll hear from you. Good afternoon, your honors. May it please the court and counsel. I'm Kirsten Doolittle, appearing on behalf of the appellee, the United Food and Commercial Workers Union, Local 1529. May it please the court. The district court correctly found that rehab, the employer in this case, failed to show that the arbitrator exceeded his authority under their collectively bargained contract. The court should affirm the award because under the well-settled law of the Eighth Circuit, it is clear that the arbitrator did not exceed his authority and that reinstatement of the agreement would not violate any dominant public policy at issue here. Rehab's singular argument that the arbitrator exceeded his authority is that its abuse policy, which is a work rule that is neither expressly incorporated in the CBA or written into the CBA, precluded the arbitrator from reducing the termination upon finding that the agreement engaged in professional conduct, in unprofessional conduct, excuse me. This argument fails for three reasons. First, rehab is foreclosed from even advancing this argument because it did not do so at arbitration. In Bollinger, the Eighth Circuit rejected an employer's attempt to do the very same thing that rehab seeks to do here. In that case, the employer asserted on appeal that a different provision from its CBA required the arbitrator to uphold a termination. The employer had not argued that contract provision during the arbitration. The Eighth Circuit rejected that attempt and the argument by the employer stating quote, on the facts of this case, we agree with the district court that the employer's failure to argue this issue waived it. In general, federal courts do not permit a party to withhold an issue or argument during arbitration and then upon losing, raise it to the review in court. During the arbitration, rehab never asserted that the abuse policy mandated termination by the arbitrator upon a finding of any misconduct. To the contrary, the record shows, as the court noted, that at the beginning of the arbitration, rehab stipulated to the issue of whether termination was the proper remedy. In Teamsters v. Cargill, the Eighth Circuit stated that when two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide that issue. And as the Cargill court stated, rehab cannot now argue that the arbitrator had no authority to decide the very issue that it agreed to submit to it. As to the second reason why their argument failed, and this is the primary argument, I believe, for the court. Even if the court considers their argument today, the Eighth Circuit has made clear in both Trailmobile and in Bollinger that arbitrators are not bound by an employer's work rules such as a rehab's abuse policy unless they are expressly written into the contract. And in Bollinger, the court explained the rationale for this rule, stating that only when the union has unambiguously agreed to an exception to the just cause limitation, either in the contract or in an agreement resolving a particular disciplinary situation, will the arbitrator be precluded from conducting the collectively bargained just cause analysis. A plain reading of the contract shows, contrary to rehab's assertion in their papers, that there is no mention of the abuse policy in this collective bargaining agreement. It is not expressly written in or referred to anywhere in the CBA. And I would commend the court's attention to pages 7 through 25 of the joint appendix. This brings us to the third reason that rehab's argument that the arbitrator exceeded his authority failed. Rehab asked this court to abandon this well-settled rule from Trailmobile and Bollinger in light of the National Labor Relations Board's recent decision in Huber announcing the contract coverage rule. The contract coverage rule, however, has nothing to do with an arbitrator's authority in interpreting contract language. This rule provides that where a management rights clause allows an employer to implement or revise a work rule that the employer does not commit an unfair labor practice when it unilaterally does so. Before the contract coverage rule, an employer would be found in violation of the act if it changed a work rule that was not expressly referenced in the management rights clause. But Huber does not do what rehab suggests. The National Labor Relations Board did not find that a management rights clause has the effect of expressly incorporating work rules into a contract. And that's what the Eighth Circuit requires in order for an arbitrator to be bound by that work rule. And on that score, the Eighth Circuit has expressly rejected the result that's been advocated by rehab. In Bollinger, the court stated, when a CBA acknowledges management's right to adopt rules unilaterally, that does not include the right to renege on the collectively bargained agreement that the employer will only discharge an employee for just cause. One last point about Huber. Rehab's own management rights clause forecloses the result that it seeks. As counsel stated, the first enumerated right in that has the right to discipline or discharge employees for just cause. So even if the court applied Huber and found that the contract's management rights clause somehow incorporated this abuse policy, the same management rights clause still required the arbitrator to conduct the just cause analysis that he did, thereby acting within the scope of the contract and his authority. I'd now like to turn to the second argument that rehab advanced in support of its appeal, which is that reinstatement of the agreement would violate public policy. To meet this exception, rehab must specify laws that evidence a public policy that would be violated if the agreement was reinstated. The Eighth Circuit has stated that while an employer's failure to raise this argument at arbitration does not foreclose it on appeal, that failure, quote, will likely be fatal because it prevented the development of a factual record on the issue. Here, the laws cited by rehab articulate a purpose of protecting long-term care facility residents from abuse, neglect, and exploitation. Those laws also include specific and rigid reporting and investigation requirements by state agencies, including the Arkansas Office of Long-Term Care. Rehab's public policy argument failed, given the record evidence that this same agency, the Office of Long-Term Care, investigated these allegations, concluded that they were unfounded, and reported those findings to rehab. In its papers, rehab stated that evidence of the investigation was never allowed into the record by the arbitrator and should not be considered by this court, and the union respectfully disagrees. The record shows that while the arbitrator did not allow the Office of Long-Term Care's report into the record at rehab's objection, the arbitrator did allow rehab's administrator to testify without objection that the Office of Long-Term Care investigated the same allegations against agreement, concluded that they were unfounded, and reported those findings to rehab. Given the agency's findings and the fact that its charge is to carry out the very laws and very purposes cited by rehab, rehab's public policy argument failed. Further, the arbitrator's own factual findings, which he was charged by the party's collectively bargained just cause standard to analyze and evaluate, show that no public policy would be violated if the agreement was reinstated. And on that score, I just want to share a piece from the record with respect to the arbitrator's factual findings, because I believe that this really sums up what he found. And this is found on pages 210 and 212 of the joint appendix, I think 212. Ms. Brooks acted unprofessionally when she continued to engage Mr. E in an argumentative and loud voice during their exchanges over the purchase of cigarettes by Mr. E and his need to make his appointment on time. No evidence was presented during hearing that Ms. Brooks made derogatory statements to Mr. E. And while the union agrees that unprofessional conduct and argumentative discourse are certainly not preferred, the statutes referenced by REHAB and the public policy of those statutes do not prohibit reemployment of employees who engage in this type of conduct. Coupled with the agency's own finding that those allegations were unfounded, there simply is no evidence in the record to support that argument. Your Honor, as I see my time has concluded, I'm glad to answer any questions you may have. Otherwise, I'd respectfully request that the court affirm the district court's award and submit the union's case on its brief. Very well. Seeing no questions, we thank you for your argument. And Mr. Kraska, we'll hear from you in rebuttal. Thank you, Your Honor. I'd like to turn to the public policy argument now. As Counselor Fidapoli stated, the public policy in question here must be well-defined and dominant. Further, the public policy question is not whether the employee's behavior violated public policy, but rather reinstatement would violate public policy. Specifically, I believe that the appellee cited the Boehringer case and I believe she misstated it a little bit because she mentioned that since we didn't bring this public policy argument up to the arbitrator, that we foreclosed on bringing it up on appeal. However, I don't think she said that. She said the record would not be developed on it, so it might be more challenging for you, but I think she acknowledged that you may bring it up. Go ahead. Go ahead if you want to make that point again, that's fine. I guess the only point that I was going to make there is that a public policy argument is right for courts to decide, not for an arbitrator to decide. They decide the terms of the collective bargaining agreement. As to the record not being well-defined from the arbitrator, I would also disagree with that. The facility administrator was questioned and testified specifically about this policy and again how the policy was promulgated based on this well-defined and dominant public policy. Specifically, she stated that the policy is there to protect residents and preventing abuse is my number one job. It is my sole purpose to do that. She also went on to state that Brooks' behavior fit the definition of what is abuse under federal regulations and under the policy. Again, that it is based off of. To say that there is no record that was presented in the arbitration, I disagree with that. Further, just to quickly touch on the Office of Long-Term Care argument, again, that record was not allowed in so I don't think it should be considered by this court. Regardless, it was an employment decision, not a decision made by the Office of Long-Term Care about a licensing requirement. Further, the MD Transportation case was the case that we cited to the National Labor Relations Board and that just allows essentially these contracts to be used. With that, I see my time has expired. If there is no other questions, I would just thank the court for its time and consideration. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. That concludes the argument session for this afternoon.